FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8:37

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| HAROLD SPROUSE, | No. 42421-5-II |
| Respondent, | |
| v. | |
| LEWIS COUNTY SHERIFF'S DEPARTMENT, | UNPUBLISHED OPINION |
| Appellant, | |
| LEWIS COUNTY CIVIL SERVICE COMMISSION, and LEWIS COUNTY, | |
| Defendants. | |

QUINN-BRINTNALL, J. — Harold Sprouse appealed the Lewis County Civil Service Commission's (Commission) decision affirming his termination from the Lewis County Sheriff's Department (Sheriff's Department) to the Lewis County Superior Court, and argued that (1) the decision was not made in good faith for cause and was arbitrary and capricious, and (2) the decision was contrary to law because it violated the First Amendment and Lewis County's whistleblower policy. The superior court reversed the Commission's decision and the Sheriff's Department appeals the superior court's decision. The Commission duly considered all the evidence presented at the hearing; therefore its decision was not arbitrary and capricious. And because Sprouse's speech was not protected under either the First Amendment or Lewis

County's whistleblower policy, the Commission's decision was not contrary to law. Accordingly, we affirm the Commission's decision.

## FACTS

In March 2009, Sprouse was briefly involved in an investigation concerning Lewis County Sheriff Mansfield. In August, 2009, The Chronicle, a local newspaper, received copies of police reports related to the investigation. The reports were released without the Sheriff's Department's authorization. Two highly-ranked members of the Sheriff's Department, Commander Steven Aust and Chief Civil Deputy Stacy Brown, were assigned to investigate whether the report had been leaked from within the Sheriff's Department.

At the time, Sprouse was one of several people who had a hard copy of the report in his possession. Commander Aust obtained the report from Sprouse and had it fingerprinted to determine if the report had been handled by any unauthorized people. The fingerprinting revealed two sets of unauthorized fingerprints on the report: Sprouse's adult son, Brad,[1] and Sprouse's son's girlfriend. On September 24, 2009, Aust and Deputy Brown interviewed Brad and his girlfriend. The interview revealed that Brad and his girlfriend had unauthorized access to the report but neither had released the report to the media. Aust and Brown did not inform Sprouse about the interviews prior to conducting them.

On October 14, 2009, Sprouse received a timed letter of reprimand for failing to properly secure confidential police reports. Under the terms of the reprimand, the letter would be permanently removed from Sprouse's personnel file after 18 months. On October 17, three days after receiving the reprimand, Sprouse met with Sergeant Rob Snaza and told Snaza that he

---

[1] Brad Sprouse's first name is used for clarity.

believed Commander Aust's and Deputy Brown's investigation was excessive and a form of harassment. The next day, Sprouse made a similar report to another sergeant.

The Sheriff's Department conducted a fact-finding inquiry to determine whether Sprouse had handled his allegations about Commander Aust's and Deputy Brown's allegedly excessive investigation in an inappropriate manner. While the fact-finding inquiry was being conducted, Sprouse called Deputy Prosecuting Attorney Jonathan Richardson and told Richardson that he believed he had been the victim of witness tampering and intimidation. Richardson informed Prosecuting Attorney Michael Golden of Sprouse's complaint. The complaint was then forwarded to the Washington State Attorney General's Office and the Washington State Patrol (WSP). WSP Detective Matt Hughes spoke to Richardson and Sprouse and after discussing the case with other members of the WSP, determined that no further action was necessary.

The Sheriff's Department later became aware of Sprouse's report to Richardson. After becoming aware of Sprouse's report, the Sheriff's Department began disciplinary proceedings against Sprouse. Throughout the disciplinary proceedings, Sprouse maintained that he felt he was subjected to witness tampering and harassment as a result of Commander Aust's and Deputy Brown's investigation. Former RCW 9A.72.120 (1994); former RCW 9A.46.020 (2003). Ultimately, Sprouse's employment as a deputy sheriff was terminated.

Sprouse appealed his termination to the Commission. The Commission upheld the termination decision because the Sheriff's Department had proven that "Deputy Sprouse, with no reasonable basis, communicated a criminal allegation against senior members of the Lewis County Sheriff's Office to the Prosecuting Attorney and did so in retaliation for disciplinary action taken against him previously, and further that that conduct is grounds for serious disciplinary action and therefore the termination was imposed in good faith for just cause."

Clerk's Papers (CP) at 184-85. Sprouse appealed to the Lewis County Superior Court which reversed the Commission's decision. The Sheriff's Department appeals.

ANALYSIS

The Commission is a statutorily created body whose members are appointed by officials outside the police force to ensure independence. RCW 41.12.030. Our authority to review Commission decisions is also defined by statute. RCW 41.14.120. Under RCW 41.14.120, "[t]he judiciary's role in reviewing action taken by the [Civil Service] Commission is severely limited." *Greig v. Metzler*, 33 Wn. App. 223, 226, 653 P.2d 1346 (1982). Appellate review of a Commission's decision "shall be confined to the determination of whether the order of removal, suspension, demotion, or discharge made by the commission, was or was not made in good faith for cause, and no appeal shall be taken except upon such ground or grounds." RCW 41.14.120. On appeal, we review the Commission's record, not the record or decision at the superior court. *Grieg*, 33 Wn. App. at 226.

In his briefing, Sprouse cites to the Administrative Procedure Act (APA), ch. 34.05 RCW, and several APA cases to define our standard of review. As a result, Sprouse alleges that we review findings of fact for substantial evidence and conclusions of law de novo. However, it is clear that ch. 41.14 RCW governs "Civil Service for Sheriff's Office." Specifically, RCW 41.14.120 explicitly controls decisions regarding "removal, suspension, demotion, or discharge" and explicitly states the proper standard of review. Under RCW 41.14.120, we do not separately review findings of fact or conclusions of law. Instead, we review the Commission's decision as a whole to determine whether the decision demonstrates that the Commission duly considered the evidence presented at the hearing. *See State ex rel. Perry v. City of Seattle*, 69 Wn.2d 816, 821, 420 P.2d 704 (1966).

We "must exercise independent judgment to determine whether the Commission acted arbitrarily, capriciously, or contrary to law." *Greig*, 33 Wn. App. at 226 (citing *Benavides v. Civil Service Comm'n*, 26 Wn. App. 531, 613 P.2d 807 (1980); *Eiden v. Snohomish Cy. Civil Serv. Comm'n*, 13 Wn. App. 32, 533 P.2d 426 (1975)). But "[a] decision by an administrative commission is not arbitrary and capricious simply because a trial court and this court conclude, after reading the record, that they would have decided otherwise had they been the administrative commission." *Perry*, 69 Wn.2d at 821. Indeed, the Commission's decision is not arbitrary or capricious if the Commission duly considered the evidence presented at the hearing. *Perry*, 69 Wn.2d at 821. Reviewing courts are prohibited from "substitut[ing] [their] judgment for the independent judgment of the civil service commission." *Perry*, 69 Wn.2d at 821.

Sprouse alleges two grounds for reversing the Commission's decision. First, Sprouse alleges that the Commission's decision was not made in good faith for cause because it was arbitrary or capricious. Second, Sprouse argues that the Commission's decision was contrary to law because it violated Sprouse's First Amendment rights and the Lewis County whistleblower policy. After applying the limited standard of review allowed to us by statute, we are compelled to affirm the Commission.

ARBITRARY AND CAPRICIOUS

Here, the Commission determined that Sprouse's termination was made in good faith for cause based on its findings that Sprouse had no reasonable basis for his report that his supervisors engaged in criminal activity. In reaching this conclusion, the Commission considered, and discounted, Sprouse's belief that the investigation into the leaked report was intimidating and harassing. Instead, the Commission focused on the fact that Sprouse had repeatedly been informed that his supervisors did not believe there had been any criminal

5

conduct, the investigation into the sheriff's conduct had already been completed, and Sprouse had received only minor discipline for failing to secure the report.

Sprouse does not argue that the Commission failed to consider this evidence when making its decision. Instead, he argues that the Commission failed to correctly interpret the evidence or improperly assigned weight to the testimony. In other words, Sprouse's argument that the Commission's decision was arbitrary and capricious is an attempt to persuade us to weigh the evidence differently and to reach a different conclusion than the Commission. Even if we agreed with Sprouse's interpretation of the evidence, it is not appropriate for us to reverse the Commission because we would have reached a different conclusion. Furthermore, it is evident that the Commission duly considered all the evidence and it dismissed other bases for Sprouse's termination that were not supported by the evidence presented at the hearing.[2] Therefore, as a matter of law, the Commission's decision was not arbitrary and capricious. RCW 41.14.120.

CONTRARY TO LAW

Sprouse also contends that his report to the prosecutor was protected speech under the First Amendment and the Lewis County whistleblower policy. Sprouse argues that the Commission's decision should be reversed because the decision is contrary to law. But the Sheriff's Department correctly argues that Sprouse's speech is not protected under the First

---

[2] The Sheriff's Department presented four reasons for Sprouse's termination: (1) insubordination, (2) disregard of the chain of command, (3) dishonesty and untruthfulness, and (4) "using his official position to retaliate without any basis in fact." CP at 182. The Commission found that the allegations of dishonesty and untruthfulness were not supported by the evidence. The Commission also concluded that the allegations of insubordination and violating the chain of command were improper because reporting a crime to an appropriate authority cannot be insubordinate or violate the chain of command. However, as explained above, the Commission concluded that the retaliatory nature of the report justified Sprouse's termination.

Amendment. In addition, Sprouse's report was not a whistleblower complaint. Accordingly, Sprouse's argument that the Commission's decision was contrary to law fails.

As an initial matter, the Commission determined that "a deputy sheriff, who has a good faith belief that a crime has been committed in the Sheriff's Office has every right to communicate that to a representative of the Lewis County Prosecuting Attorney's Office." CP at 184. But the Commission found that Sprouse lacked such a good faith belief that a crime had been committed and, therefore, his speech was not protected by this right. We note that, whether the statement was false or made in good faith is not the correct inquiry to determine whether an employee's First Amendment rights have been violated by an adverse employment action. As we explain below, the Commission's decision reached the correct legal conclusion and, thus, the Commission's decision was not contrary to law.

A.    FIRST AMENDMENT

The First Amendment prohibits the government from making any law "abridging the freedom of speech." U.S. CONST. amend. I. Although government employees do not give up their First Amendment rights "to comment on matters of public interest," a government employee's rights under the First Amendment are limited by the "State's interests as an employer in regulating the speech of its employees." *Connick v. Myers*, 461 U.S. 138, 140, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). Our task, when determining whether a government employer has violated an employee's First Amendment right, "is to seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick*, 461 U.S. at 142 (alteration in original) (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d

811 (1968)). Therefore, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, [the] court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147.

Recently, the Ninth Circuit distilled the case law establishing government employee protections under the First Amendment into a five-step inquiry. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1047 (2010). This inquiry poses five questions:

> (1) [W]hether the [employee] spoke on a matter of public concern; (2) whether the [employee] spoke as a private citizen or public employee; (3) whether the [employee's] protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng*, 552 F.3d at 1070. If the employee fails to show that the matter was of public concern, the speech is unprotected and our inquiry ends.

A matter of public concern relates to "'any matter of political, social, or other concern to the community.'" *Eng*, 552 F.3d at 1070 (quoting *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 422 (9th Cir.), *cert. denied*, 515 U.S. 1161 (1995). "But 'speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern.'" *Eng*, 552 F.3d at 1070 (internal quotations omitted) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)).

Sprouse argues that his statements should be characterized as a matter of public concern because they related to potential criminal activity and corruption in the Sheriff's Department.

But given the "'content, form, and context'" of the statement, the Commission characterized the statements as a personnel matter related to Sprouse's dissatisfaction with the way in which the sheriff handled his earlier disciplinary matter. *Eng*, 552 F.3d at 1070 (quoting *Johnson*, 48 F.3d at 422). We agree, therefore, that Sprouse's statements were not related to a matter of public concern.

Sprouse's statements are not protected speech under the First Amendment insofar as they relate to adverse employment action because Sprouse did not speak on a matter of public concern. Because Sprouse's speech was unprotected, the Commission's decision was not contrary to law.

B. WHISTLEBLOWER POLICY

Sprouse also argues that he was *required* to make the report to the prosecutor under Lewis County's whistleblower policy. Sprouse argues that because he believed that the Sheriff's Department's command staff was engaged in witness tampering and witness intimidation, he had a responsibility to report the perceived improper government action. But the Commission determined that Sprouse's complaint was not made in good faith but was made in retaliation for earlier disciplinary action taken by the sheriff's office. Accordingly, there was no improper government action that would give rise to a requirement to report the action under the Lewis County whistleblower policy.

No. 42421-5-II

Under the statutorily prescribed standard of review, we hold that the Commission's decision was made in good faith for cause. Accordingly, we reverse the superior court and affirm the Commission's decision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

VAN DEREN, J.

WORSWICK, C.J.

10